CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

September 30, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **CURTIS LEROY FLOYD,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:24cv00356** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **HAPPY SMITH, M.D., et al.,** | ) | **By: Robert S. Ballou** |
| **Defendants.** | ) | **United States District Judge** |

Curtis Leroy Floyd, a Virginia inmate proceeding *pro se*, has filed this suit under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs. Defendants White, Sykes, and Dillman (the Correctional Defendants) have filed a Motion to Dismiss the case under FED. R. CIV. P. 12(b)(6). For the reasons stated below, I will grant their motion.

## I. BACKGROUND

Floyd, an inmate at Red Onion State prison, regularly complained of pain radiating down his right leg starting in January 2020. Over the next three to four years, his symptoms increased from pain in the calf when standing to constant back pain plus pain in his right hip and buttock and numbness down his right leg. He alleges that he was seen by the medical staff at Red Onion solely for these complaints eight times during 2020, twice in 2021, once in 2022, seven times in 2023, plus physical therapy, and at least twice in 2024 before he filed his lawsuit in August 2024, but that the medications he was given were not helping and his pain was getting worse.

By September 2023, Floyd submitted a request to defendant Sykes, the ADA coordinator at the prison, asking for a wheelchair to get to and from his classes and outside recreation. Dr. Sykes denied the request because it had not been authorized by Dr. Smith. Floyd filed a grievance, alleging that denial of the wheelchair excluded him from participation in/denied him the benefits of services, programs, and activities at the institution. Dkt. No. 10 at 20. Warden

White found the grievance unfounded, as did defendant Dillman at the level II grievance appeal. *Id.* at 15-16.

In his suit, Floyd alleges that Sykes, White, and Dillman were deliberately indifferent to his serious medical needs by:

1. Denying him a wheelchair (which he states also violated his right to reasonable accommodation under the Americans with Disabilities Act [ADA]);
2. Denying him an adequate evaluation for disability;
3. Discriminating against him because of his disability;
4. Failing to provide constitutionally adequate treatment;
5. Allowing him to continue suffering severe pain when other medications and treatments were available;
6. Causing further degeneration of his condition.

## II. Discussion

### A. Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. The court must accept as true all factual allegations in the complaint and reasonable inferences from those facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If, accepting those facts as true, the complaint fails to show a plausible entitlement to relief from the defendants, the motion to dismiss must be granted. Legal conclusions, formulaic recitations of the elements of a cause of action, speculative assertions, and conclusory statements need not be accepted. *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). The court should not grant a motion to dismiss unless the plaintiff is clearly not entitled to relief under any possible construction of the allegations. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989).

The Eighth Amendment prohibits unnecessary and wanton infliction of pain, which serves no penological purpose. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two components to deliberate indifference, one objective and the other subjective. Objectively, the alleged acts or omissions of the defendant must cause, or create a serious risk of causing, significant physical or emotional injury. Subjectively, the facts must show that the defendant actually knew of the objectively serious risk of harm to the prisoner and disregarded that risk in their actions. *De'Ionta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013). Whether the defendant had the requisite knowledge of the risk is a question of fact, "subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a [defendant] knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). For claims involving medical treatment, non-medical prison personnel may rely upon the expertise of prison health care providers. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990).

**B. Floyd's Claims**

Floyd's claims against White and Dillman are based solely upon these defendants finding his grievance unfounded at step 1 and step 2 of the appeal procedure. Ruling against a prisoner on a grievance, however, is not a constitutional violation, and there is no liability under § 1983 for a prison official's response to a grievance or appeal. *Brown v. Virginia Dep't of Corr.*, No. 6:07-CV-00033, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009). For this reason, Floyd's claims against White and Dillman must be dismissed.

For purposes of analyzing his claims against Sykes, I will consider Floyd's ongoing back pain and degenerative disc disease to be an objectively serious condition, for which a risk of significant physical injury exists if not appropriately treated. The issue to resolve,

constitutionally, will be whether Sykes subjectively knew that her actions or inaction would increase the risk of harm to Floyd and chose to disregard that risk.

**Claim One – Denial of Wheelchair**

**1. Eighth Amendment**

In evaluating whether Sykes, the ADA coordinator, subjectively knew that failing to provide a wheelchair to Floyd created a substantial risk of injury to him, I first consider that the ADA coordinator is not a health care professional. The ADA coordinator manages requests and grievances regarding disability-related concerns. Virginia Dep't of Corr., *Inmates & Probationers//Americans with Disabilities Act*, https://vadoc.virginia.gov/inmates-and-probationers/americans-with-disabilities-act/ (last visited March 26, 2026). In carrying out the responsibility of ensuring compliance with reasonable accommodation requests, the coordinator will review any medical documentation provided by the inmate, the inmate's family, or otherwise made available for review. *Id.* The Department of Corrections also has an Operating Procedure for Managing Inmates with Disabilities, and the list of duties for the facility ADA Coordinator highlights the administrative nature of this role. VDOC Op. Proc. 801.3, *Managing Inmates and Probationers/Parolees with Disabilities*, § II(C). Relying on the medical information received is part of the job. *See Wood v. Brown*, No. 1:24cv1036, 2026 WL 285965, at *5 (E.D. Va. Feb. 3, 2026) (finding that the ADA Coordinator was entitled to rely upon the opinions and expertise of medical personnel to determine that inmate was not entitled to dental prosthodontics). Defendant Sykes was entitled to rely upon Dr. Smith's failure to order a wheelchair to determine whether the wheelchair was a reasonable and necessary accommodation.

In his Opposition to the Motion to Dismiss, Floyd argues that he is clearly impaired by his documented medical condition of degenerative disc disease with osteophytes (bone spurs),

radiating pain, and thecal sac compression. The condition limits his ability to stand and walk for long periods of time without severe pain and causes extreme discomfort when trying to sleep. Those facts are accepted as true. The question is *whether failing to provide a wheelchair* created a serious risk of physical injury, and whether Sykes knew that failing to provide the wheelchair created a significant risk of injury. From the facts alleged in the Amended Complaint and the supporting documents provided by Floyd, there is no evidence that she knew of a serious risk of harm if she did not provide the wheelchair. On the contrary, she relied on the treating doctor's recommendation, and therefore, she was not deliberately indifferent. Floyd's argument that, as an ADA coordinator, she "had full knowledge of what consists of a serious medical condition requiring a wheelchair and/or treatment" is simply speculation. He has offered no evidence or legitimate inferences to support his assumption of what she knew and did not know. The court need not accept such speculative assertions as facts. *Langford*, 62 F.4th at 124. The constitutional claim for failing to provide a wheelchair fails.

**2. ADA Claim**

Unlike claims under § 1983, which must be filed against a person acting under color of state law, Title II of the ADA recognizes a cause of action for discrimination against public entities, not individuals. *Baird v. Rose*, 192 F.3d 462, 471 (4th Cir. 1999). Floyd's claim against Sykes in her official capacity constitutes a claim against the Commonwealth, which is an entity, and Title II abrogated sovereign immunity for claims under the act. *Adams v. Montgomery Coll. (Rockville)*, 834 F. Supp. 2d 386, 391 (D. Md. 2011).

To seek relief under the ADA, a plaintiff must prove that (1) he has a disability; (2) he is otherwise qualified (with or without accommodation) to receive the benefits of the public services, programs, or activities; and (3) he was denied the benefits of such services, programs,

or activities, on the basis of his disability. *Baird,* 192 F.3d at 468. There are three distinct grounds for relief—three different ways to prove discrimination—under the third element of proof: intentional discrimination/disparate treatment, disparate impact, and failure to make reasonable accommodations. *Adams*, 834 F. Supp. 2d at 392. Floyd's claim that he was discriminated against by Sykes' failure to provide a wheelchair, as reasonable accommodation under the ADA, also fails.

I accept Floyd's representation that he has a medical condition that impairs some of his activities of daily living as defined under the ADA. Those facts alone do not conclusively establish that his condition meets the required level of severity to render him a qualified individual with a disability within the meaning of the ADA. *See McIntyre v. Robinson*, 126 F. Supp. 2d 394, 408 (D. Md. 2000) (holding that plaintiff alleging heart disease and hypertension that limit his activities is not enough to establish, for summary judgment purposes, that he is disabled within the meaning of the ADA). "[D]etermination of a plaintiff's disability must be made with reference to the mitigating measures which the plaintiff employs." *Id.* at 408. Floyd accepts help from his cellmate when needed, but for the purposes of this motion, I will assume that he has a disability within the meaning of the Act.

I also accept that Floyd is qualified to receive the benefits of outdoor recreation and DCE classes. What he has not adequately alleged is that he has been *denied* these benefits. That his impairment makes receipt of the benefits more challenging is not the same as being denied the benefits. Floyd states in his Amended Complaint that his cellmate helps him get his food tray, commissary items, and telephone access, and helps him get to and from his DCE classes. That means he is going to his classes and getting his food trays. If he has not been denied benefits, then the ADA has not been violated.

What constitutes reasonable accommodation will vary according to the circumstances. *Seremeth v. Board of Cnty. Comm'rs*, 673 F.3d 333, 340 (4th Cir. 2012). One of these circumstances undoubtedly includes what is considered medically necessary. In the present case, Dr. Smith did not consider a wheelchair medically necessary, and Sykes was entitled if not required to rely on the doctor's opinion. More importantly, the regulations promulgated to enforce the ADA specifically provide that "[t]his part does not require a public entity to provide to individuals with disabilities personal devices, such as wheelchairs . . ." 28 C.F.R. § 35.135. A public entity may be required to make reasonable modifications so that an individual using a wheelchair may access the premises safely. *Id.* at § 35.137. That is different from requiring the provision of a wheelchair itself.

Finally, the Act prohibits *discrimination* against a person with disabilities. While failure to provide reasonable accommodation is one type of discrimination, failure to provide a wheelchair in this case was neither a failure to provide reasonable accommodation, nor was it discrimination. Floyd's allegations do not establish that he is being discriminated against because of his disability. To recover damages for discrimination under the ADA, he must prove not only discrimination, but that the discrimination was deliberately indifferent. *Koon v. North Carolina*, 50 F.4th 398, 403 (4th Cir. 2022). For the reasons discussed in connection with his Eighth Amendment claim, Floyd's factual allegations (as opposed to his conclusory statements) do not support the finding of deliberate indifference.

Because Floyd's allegations fall short of showing that he is being denied any services, and in any event, provision of a wheelchair is specifically excluded as a requirement under the ADA, his ADA claim fails.

**Claim Two – Denying an Adequate Evaluation for Disability**

There is no constitutional entitlement to a disability evaluation for adult prisoners. [1] Any evaluation would be based on medical necessity, not simply on that which may be desirable. *Marrow-El v. Shearin*, No. JFM-11-1009, 2012 WL 366892, at *4 (D. Md. Feb. 2, 2012). Operating Procedure 801.3 requires an intake health screening on inmates upon their *initial arrival* to the DOC but does not otherwise provide for mandatory evaluations. *Id.* at § VIII(A). Floyd was not a new arrival at the time he began experiencing pain from his degenerative disc disease. Even if he had been, § 1983 provides a vehicle for protecting a person's constitutional rights, not for correcting violations of prison rules by state officials. *Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992). This claim fails because no constitutional right has been violated.

**Claim Three – Discrimination on the Basis of Disability**

As discussed in the discussion of the ADA, Floyd has not alleged facts sufficient to support an ADA claim for disability discrimination.

Nor do his alleged facts support a constitutional claim for discrimination. To state a claim under the Fourteenth Amendment, a plaintiff must plead sufficient facts to show that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus. *SAS Associates 1, LLC v. City Council of Chesapeake*, 91 F.4th 715, 720 (4th Cir. 2024). Discriminatory animus cannot be shown simply by saying that a benefit was denied to one person and granted to another. Rather, "there must be some evidence that the disparate treatment was intentionally selected to produce adverse effects upon an identifiable group." *Id.* Floyd alleged that he has been discriminated against because of his

[1] The primary exception to this general rule requires the state to evaluate the intellectual capacity of death row inmates, because executing an intellectually disabled person is unconstitutional. *See, e.g., Moore v. Texas*, 581 U.S. 1, 12–13 (2017).

disability, and he supports his claim by pointing to other inmates who have received corticosteroid injections, while he has been unable to receive them. Persons without an injury and impairment would have no medical need for such injections, so it is illogical to say that he was not given such injections because he was disabled. The only fair conclusion from Floyd's Amended Complaint and supporting documents is that he was denied medical treatment deemed medically unnecessary, not that he was discriminated against.

**Claim Four – Failing to Provide Constitutionally Adequate Treatment**

Defendant Sykes is not a health care provider. As such, she is entitled to rely upon the prison's health care providers to provide constitutionally adequate treatment. *Miltier*, 896 F.2d at 854. Floyd has not alleged that she denied him access to the doctor or otherwise interfered in her treatment. Any allegations regarding the adequacy of the treatment must be against the doctor and other health care providers, not against Ms. Sykes.

**Claim Five – Allowing Him to Suffer Severe Pain When Other Treatment Available**

Again, Sykes is not a health care provider. She was not responsible for the treatment choices made by the medical personnel, and she cannot be found liable for those choices.

**Claim Six – Causing Further Degeneration of his Condition**

A degenerative condition, by definition, is one that gets progressively worse over time. For that reason alone, Floyd's claim that anyone's actions caused his condition to get worse would be very difficult to support with evidence. At any rate, Sykes was not his treating health care provider—not even a health care provider at all—and any deterioration that Floyd attributes to lack of treatment is not her responsibility or liability.

## III. CONCLUSION

For the reasons stated, the Correctional Defendants' Motion to Dismiss (Dkt. No. 38) will be granted. An appropriate order will be entered this date.

Enter: September 30, 2026

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge