CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
September 30, 2026
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **CURTIS LEROY FLOYD,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:24cv00356** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **HAPPY SMITH, M.D., et al.,** | ) | **By: Robert S. Ballou** |
| **Defendants.** | ) | **United States District Judge** |

Curtis Leroy Floyd, a Virginia inmate proceeding *pro se*, has filed this suit under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs and disability discrimination. Defendants Smith, Holbrook, and Trent (the Medical Defendants) have filed a Motion to Dismiss the case under FED. R. CIV. P. 12(b)(6). For the reasons stated below, I will grant the Motion to Dismiss Nurse Trent, and I will grant in part and deny in part the Motion to Dismiss Dr. Smith and Nurse Practitioner Holbrook.

## I. BACKGROUND

Floyd, an inmate at Red Onion State prison, first complained of pain in his shin and cramping in his right calf when standing on January 15, 2020, according to his Amended Complaint. Dkt. No. 23 at 3. He saw Nurse Practitioner Ball on January 28, 2020, with continued complaints of pain down his right leg. Nurse Practitioner Ball placed him on a low dose (30 mg.) of Cymbalta and referred him for x-rays of the lumbosacral spine. The x-rays, taken January 31, 2020, showed multilevel degenerative disc disease, worse at L5-S1, lateral and anterior bone spurs, and spondylitic degenerative changes of the facet joints. Dkt. No. 10 at 13. Between March and October 2020, he alleges that he was seen by Red Onion medical providers five times for ongoing complaints of worsening pain in his back and leg, including numbness down his thigh in addition to the cramping. On October 21, 2020, he asked Nurse Practitioner

Leah Holbrook[1] for an MRI. Her notes reflect that Floyd denied loss of sensation and loss of bowel or bladder control. He had no spasm or spinal tenderness, and his range of motion was intact. She changed his medication, at his request, from Celebrex to Naproxen, and began tapering him off Cymbalta. Dkt. No.30 at 8. He was seen in May[2] and July 2021 and February 2022 for back pain.[3] Notes from his July 12, 2021, visit stated that he continued to complain of low back and right glute pain, and that several different medications (Celebrex, Cymbalta, Voltaren, Naproxen, Tylenol, Prednisone, and Ibuprofen) had not alleviated his pain. Dkt. No. 30-1 at 5.

By January 17, 2023, Floyd complained that the pain had moved to his right hip as well, and that he could not stand for long. Nurse Practitioner Holbrook ordered x-rays of his lumbar spine and hips. The x-ray report for his spine, dated January 20, 2023, showed spondylolysis at L5 without anterolisthesis, but normal alignment and well-maintained intervertebral spaces. Dkt. No. 10 at 7. The hip x-rays showed moderate arthritic changes of the hips, with circumferential collar bone spurs and joint space narrowing. *Id.* at 9. He was referred for physical therapy, which started on March 7, 2023, and ended on April 11, 2023. On July 3, 2023, Floyd sent a request to the medical department asking for a printout of the "Fact Sheet" listing the signs

[1] Nurse Practitioner Holbrook is sometimes referenced in medical records and in other pleadings in this case as Nurse Practitioner Jessee. When she first examined Floyd, she was known as Nurse Practitioner Jessee; she later became Nurse Practitioner Holbrook. For clarity, this opinion will refer only to Nurse Practitioner Holbrook.

[2] Floyd notes that he sprained his ankle playing basketball on February 25, 2021. Dkt. No. 23 at 5. X-rays of the ankle were taken on April 9, 2021, showing mild arthritic changes and bone spurs, but no fracture or dislocation. Dkt. No. 10 at 11.

[3] Floyd's complaint states that he was seen on May 6, 2022, by Nurse Trent for a suspected hernia. Nurse Trent confirmed that it appeared to be an abdominal hernia and advised Floyd to contact the medical department if the area became painful or grew larger. Dkt. No. 23 at 6. He alleged that he saw a nurse (no name provided) on Feb. 28, 2023, because the hernia had been painful for three months. *Id.* at 7.

indicating when surgery may be needed for osteoarthritis. Nurse S. Jessee responded that "there isn't any surgery for osteoarthritis." Dkt. No. 23 at 7.

On September 4, 2023, Floyd submitted a wheelchair request to the ADA coordinator, advising that he could not stand very long and could not walk very far. He wanted the wheelchair to get to and from DCE classes and outside recreation, claiming that denial of the wheelchair would exclude him from participating in the services, programs, and activities of the prison, in violation of the Americans with Disabilities Act (ADA). Floyd saw Dr. Happy Smith on September 6, 2023, and requested additional x-rays, corticosteroid injections, and approval of a wheelchair. Dr. Smith advised that Floyd had no loss of muscle mass and no deformity; he ordered additional x-rays of the right hip but declined to give corticosteroid injections. On September 7, 2023, Floyd received a response from the ADA coordinator, denying his request for a wheelchair because Dr. Smith did not order one. *Id.* at 7-8.

On September 10, 2023, Floyd filed a grievance against the ADA coordinator and against Dr. Smith, for denial of the wheelchair, and asked for an MRI to see if he had nerve compression in his back. Dkt. No. 10 at 20. Warden White determined the grievance to be unfounded, noting that Dr. Smith did not order a wheelchair and that Floyd had refused an x-ray on September 8. *Id.* at 16. Floyd appealed the Level I decision, denying that he refused x-rays and asserting that he was never called for x-rays. He complained that Dr. Smith said the corticosteroid injections were not for arthritis and accused Dr. Smith of refusing an MRI because it would show that he had a compressed nerve and needed a hip replacement. *Id.* at 16-18. The Level II appeal was denied by Dr. Dillman, the Acting Assistant Health Services Director, who stated that Floyd had seen his medical provider on September 6 and on September 12; the provider "determined that a wheelchair is not the right treatment for your condition." *Id.* at 15.

Floyd alleged that when he saw Dr. Smith on September 12, 2023, he again advised that he needed a wheelchair and explained the increased pain and numbness he was having. Dr. Smith again told him that he had no loss of muscle mass and no dysfunction. The doctor looked at the "old" x-rays from "nearly a year before" (January 2023) and checked Floyd's reflexes, then "claimed" that a wheelchair is often not the right treatment for osteoarthritis. Dkt. No. 23 at 8-9. The right hip x-ray ordered by Dr. Smith was done on October 6, 2023, showing mild to moderate narrowing of the joint space. Dkt. No. 10 at 5.

On October 15, 2023, Floyd filed a facility request for an appointment to get corticosteroid injections in his spine and hips. Having heard nothing by October 25, 2023, he filed a written complaint for not responding to his request. On October 30, he saw Dr. Smith regarding an unrelated chronic condition and asked about getting corticosteroid injections. Dr. Smith advised that he would talk to Dr. Fox and get back to Floyd. He also gave Floyd a new prescription for Elavil. Dkt. No. 23 at 10. On December 6, 2023, Floyd saw Nurse Practitioner Holbrook for continued complaints regarding his back and leg. She ordered more Voltaren muscle rub for him and referred him again to physical therapy. She told Floyd that if he was still having issues after physical therapy, she would refer him to see an orthopedist and order an MRI. *Id.* at 12.

On November 9, 2023, Nurse Trent responded to the October 25 written complaint, stating that Floyd had met with Dr. Smith on October 30 to discuss Floyd's back. Trent told Floyd to follow the doctor's recommendation and follow up with medical as needed. Floyd then filed a regular grievance on November 14, alleging that he was being denied adequate health care and treatment in violation of Department of Corrections Operating Procedures. On December 13, 2023, Floyd asserts that Warden White determined his grievance unfounded, as he had been

seen on September 6 and 12, October 30, and December 6, when he was referred for physical therapy. *Id.*

On February 13, 2024, Floyd was advised that an MRI was ordered for his lumbar spine. He was transported to Ballad Health Hospital on April 19, 2024, to have the MRI. *Id.* The MRI report of April 19 reported bilateral spondylolysis and grade 1 anterolisthesis at L5-S1, along with a diffuse disc bulge causing at least mild thecal sac compression, loss of disc height, and severe bilateral neuroforaminal narrowing. L4-L5 also had loss of disc height and a disc bulge causing minimal thecal sac compression. No other significant abnormalities were noted. Dkt. No. 10 at 2.

In his opposition to the current Motion to Dismiss, Floyd advised that he had spinal surgery on December 20, 2024, including removal of the discs at L5-S1 and L4-L5 and spinal fusion with screws at those levels. At the time of submitting that pleading (which the court received on January 2, 2025, just under two weeks after the surgery), Floyd complained of excruciating ongoing pain, inadequate medication to control the pain, and limited mobility, requiring a walker for the next three months. He also had to wear a back brace and could not lift more than 10 pounds. Dkt. No. 54.

Floyd alleges that the medical defendants were deliberately indifferent to his serious medical needs over the time they treated him for back pain, January 2020 through December 2024 because they repeatedly continued pursuing ineffective medication and physical therapy despite his continued complaints of worsening pain over the years.[4] He alleges that the delay in

[4] Floyd broke his deliberate indifference claim into multiple claims – (1) denial of a wheelchair, (2) allowing him to continue suffering with ineffective treatment despite the availability of other treatment options, (3) treating him for arthritis rather than degenerative disc disease, and (4) causing substantial harm by delaying care. The Court construes the Complaint as a single claim of deliberate indifference from January 2020 to December 2024 rather than isolated medical decisions on different dates.

sending him for an MRI and scheduling him for surgery caused his condition to deteriorate to the point of a fracture in his spine and bulging discs requiring surgery. He also alleges that the delay caused him to experience prolonged severe pain that he otherwise would not have experienced and that he may now have permanent impairment.

Floyd also claims disability discrimination because he was denied corticosteroid injections that other inmates were receiving and he was denied a wheelchair, which impaired his ability to participate in educational and recreational programs in the prison.

## II. Discussion

### A. Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. The court must accept as true all factual allegations in the complaint and reasonable inferences from those facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If, accepting those facts as true, the complaint fails to show a plausible entitlement to relief from the defendants, the motion to dismiss must be granted. Legal conclusions, formulaic recitations of the elements of a cause of action, speculative assertions, and conclusory statements need not be accepted. *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). The court should not grant a motion to dismiss unless the plaintiff is clearly not entitled to relief under any possible construction of the allegations. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989).

The Eighth Amendment prohibits unnecessary and wanton infliction of pain, which serves no penological purpose; deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). There are two components to deliberate indifference, one objective and the other subjective. Objectively, the alleged acts or omissions of the defendant must cause, or create a

serious risk of causing, significant physical or emotional injury. Subjectively, the facts must show that the defendant actually knew of the objectively serious risk of harm to the prisoner and disregarded that risk in their actions. *De'Ionta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013). Whether the defendant had the requisite knowledge of the risk is a question of fact, "subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a [defendant] knew of a substantial risk from the very fact that the risk was obvious." Simple negligence or medical malpractice, however, is not enough to create a constitutional claim. *Estelle*, 429 U.S. at 106.

**B. Floyd's Claims**

**1. Deliberate Indifference**

***Nurse Trent.*** While Floyd has named Trent as a defendant, other than evaluating Floyd's hernia in May 2022, there are no references to Trent providing any treatment or recommendations to Floyd for his complaints of back, leg, and hip pain. Trent knew of Floyd's ongoing pain when he responded to Floyd's October 25, 2023, complaint on November 9, 2023. A decision denying a prisoner's complaint, grievance, or appeal, however, is not a constitutional violation. *Brown v. Virginia Dep't of Corr.*, No. 6:07-CV-00033, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009).

Floyd's complaint alleges that Trent was the administrator of the facility medical department at Red Onion. Administrators are responsible for record-keeping, responding to complaints, scheduling, and other tasks of a non-medical nature. As a nurse, Trent did not have authority to tell the doctor or nurse practitioner to provide a different treatment plan. *See Coppage v. Mann*, 906 F. Supp. 1025, 1042 (E.D. Va. 1995) (finding that nurse could not be liable for decision that was the doctor's prerogative to make). Finally, even if he were a

supervisory person in the medical department, under § 1983, a defendant is responsible only for his own unconstitutional acts, not vicariously liable for the acts of those under his supervision. *King v. Riley*, 76 F.4th 259, 269 (4th Cir. 2023). Even mere knowledge that other medical staff are (or might be) engaged in unconstitutional conduct is not enough to impose liability. *Id.* Accordingly, the deliberate indifference claim against Trent for Floyd's ongoing back problems will be dismissed.

In his opposition to the Motion to Dismiss, Floyd asserted for the first time that Trent was deliberately indifferent in evaluating Floyd's hernia on May 6, 2022, because he failed to treat him or refer him to a doctor, leaving him with a condition that would get worse or become painful over time. I find that the allegations against Trent are insufficient to state a claim against him because the Amended Complaint merely mentions that Trent saw him for the hernia, much the same way the Complaint listed medical contacts for any condition between 2019 and 2024. A nurse, not named in the Amended Complaint, saw Floyd on February 28, 2023, over 9 months after his visit with Trent. At that time, Floyd had a hernia approximately 4 inches long, protruding out 1 inch, which had been painful for three months. Floyd said that no medications or surgery were provided. Yet, he did not indicate that Trent or any other defendant had any knowledge of this later visit. Nor did he allege in the Amended Complaint that Trent had been deliberately indifferent to his hernia. Allegations first made in later briefs cannot substitute for amending the Complaint to include essential facts supporting a claim; a plaintiff may not raise new claims without amending his Complaint. *Barclay White Skanska, Inc. v. Battelle Mem. Inst.*, 262 F. App'x 556, 562 (4th Cir. 2008).

Likewise, the conclusory allegations in Floyd's opposition to the Motion to Dismiss do not establish the existence of an objectively serious medical need on May 6, 2022, much less that

Trent subjectively knew that this hernia was objectively serious. Trent told Floyd to return to medical if the hernia got larger or if it became painful. That is not sufficient to infer that Trent's actions or inactions *caused* the hernia to get worse. Floyd did not complain of pain until more than 9 months later, February 28, 2023, to a different nurse, identified as S. Jessee, R.N., in the attachments to Floyd's brief. Floyd told Jessee at that time that he had been experiencing pain for three months, yet he did not mention this pain to Holbrook when he saw her in January 2023, and there are no allegations that he ever mentioned the hernia to Holbrook or Smith. Nor has he alleged facts to show that Trent knew the hernia had grown larger and become painful. S. Jessee, R.N., is not a party to this suit, and the facts alleged in Floyd's brief do not reasonably infer any deliberate indifference by Trent. Accordingly, I will also dismiss all deliberate indifference claims against Trent.

***Smith and Holbrook.*** Because Dr. Smith and Nurse Practitioner Holbrook both provided primary treatment to Floyd, I will consider the claims together. In analyzing Floyd's deliberate indifference claim, I will consider Floyd's ongoing back pain, radicular symptoms, and degenerative disc disease to be an objectively serious condition. The question is whether Floyd has alleged sufficient facts that make it plausible that Smith and/or Holbrook knew that their medical choices created a risk of serious harm to Floyd at the time the choices were made and deliberately disregarded the risk.

Floyd alleged that he repeatedly complained of worsening pain and that *none* of the medications were helping. In her chart note on July 12, 2021, Holbrook states that "[h]e has been on: Celebrex, Cymbalta, Voltaren, naproxen, Tylenol, prednisone, & Ibuprofen without relief." Dkt. No. 30 at 5. That Holbrook and Smith regularly saw Floyd and provided him with some medication does not necessarily mean that constitutionally adequate treatment has been

provided. *De'Ionta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013). Continuing an ineffective treatment plan may indicate deliberate indifference. *Perry v. Meade*, 728 F. App'x 180, 182 (4th Cir. 2018). The seriousness of the MRI findings in April 2024 can be considered in determining whether the defendants continued an ineffective treatment plan. *Id.*

Floyd first asked Holbrook for an MRI in October 2020. Dkt. No. 30 at 8. After he completed physical therapy on April 11, 2023, he continued to complain of severe pain, asking the clinic to send him the Fact Sheet indicating signs that he might need surgery. By early September 2023, he complained that his pain was so severe that he could not stand very long or walk very far; he requested a wheelchair, which was denied as not medically appropriate. Floyd alleged that he asked Dr. Smith for an MRI on September 6, 2023, and Dr. Smith refused him. In his September 27, 2023, appeal from the denial of the wheelchair and MRI, Floyd emphasized that conservative treatment—physical therapy and medication—"has not worked." Dkt. 10 at 18.

Floyd alleges in his Complaint that on October 15, 2023, he filed a facility request for a corticosteroid injection appointment. Because he had not received a response from the medical department, on October 30, 2023, while seeing Dr. Smith in the chronic care clinic for unrelated medical issues, Floyd asked in person about getting corticosteroid injections, and Dr. Smith said he would get with Dr. Fox and get Floyd started on those, but it never happened. On December 6, 2023, he asked Nurse Practitioner Holbrook to refer him to an orthopedist, schedule an MRI, or get him corticosteroid injections. She referred him for physical therapy yet again, saying that she would send him to an orthopedist and order an MRI if he was still in pain after this round of physical therapy.

Although a prisoner may not be entitled to the treatment of his choice, as argued by the defendants, the treatment afforded must be adequate to address the prisoner's needs. *De'Ionta*, 708 F.3d at 526. Floyd has alleged in the Complaint a prolonged course of ineffective treatment and worsening pain, despite the availability of multiple alternative treatments and diagnostic tests. A single act of failing to provide a wheelchair, give a corticosteroid injection, order an MRI, or refer to a specialist might constitute a disagreement over treatment. The allegations that Dr. Smith and Holbrook failed to take other actions over a course of years, in the face of ineffectiveness of conservative treatment, are sufficient to allege a claim of deliberate indifference at this stage in the pleadings.

As Floyd argued in his opposition brief, one can infer from their continued treatment of Floyd that Smith and Holbrook both knew that he had a serious medical need. Holbrook's statement that she would send him for an MRI if he was still in pain, combined with her medical training and position, suggests that Holbrook knew there was a risk of a serious medical condition that could be revealed by the MRI. That knowledge, combined with the failure of conservative treatment, including repeated physical therapy and ineffective medication for more than a year, set forth sufficient allegations to raise an inference that Holbrook was deliberately indifferent to the risk of further harm and continued pain by sending him for another round of physical therapy and delaying the MRI for a few more months. Likewise, the Complaint contains sufficient facts that the failure of conservative treatment creates an inference that Dr. Smith knew from his medical training and experience that further delay of an MRI and/or other more aggressive treatment was necessary to avoid the risk of serious harm to Floyd.

To the extent that Floyd has alleged that Dr. Smith and Holbrook continued the same course of treatment despite complaints that it was not working, he has alleged a delay in pursuing

alternate treatment. When alleging a deliberately indifferent delay in medical treatment, a plaintiff must show that the delay caused him substantial harm. *Formica v. Aylor*, 739 F. App'x 745, 758 (4th Cir. 2018). Unnecessarily prolonging an inmate's pain is sufficient harm. *Sharpe v. South Carolina Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015). At this stage of the pleadings, Floyd alleges that he repeatedly complained of worsening pain and that his prescribed medications were not working. The allegations that continuing the same conservative treatment caused harm through delay of care are sufficient to allege a claim for deliberate indifference. I will deny the Motion to Dismiss the deliberate indifference claims against Dr. Smith and Holbrook.

**2. Discrimination on the Basis of Disability**

Floyd has not alleged facts that support a claim of discrimination based on his disability. He alleges that two other inmates received corticosteroid injections, and he did not. Discrimination requires more than treating someone differently; it requires that the different treatment be motivated by discriminatory animus against a person because of a characteristic trait, in this case, disability. *SAS Associates 1, LLC v. City Council of Chesapeak*e, 91 F.4th 715, 720 (4th Cir. 2024). If other inmates are receiving medically needed injections, then presumably, they are as disabled as Floyd; therefore, there can be no presumption that the reason for treating Floyd differently is because of his disability.

To the extent that Floyd is alleging a violation of the ADA, the facts alleged do not show that Dr. Smith or Nurse Practitioner Holbrook violated the ADA. Further, Title II of the ADA does not recognize a cause of action against individuals for discrimination, only against public entities. *Baird v. Rose*, 192 F.3d 462, 471 (4th Cir. 1999). Smith and Holbrook cannot be sued in their individual capacities for violations of the ADA. Because they have also been sued in their

official capacities, that operates as a claim against the Commonwealth, which is a public entity. *Adams v. Montgomery Coll. (Rockville)*, 834 F. Supp. 2d 386, 391 (D. Md. 2011).

To seek relief under the ADA, a plaintiff must prove that (1) he has a disability; (2) he is otherwise qualified (with or without accommodation) to receive the benefits of the public services, programs, or activities; and (3) he was denied the benefits of such services, programs, or activities, on the basis of his disability. *Baird,* 192 F.3d at 468. There are three distinct grounds for relief—three different ways to prove discrimination—under the third element of proof: intentional discrimination/disparate treatment, disparate impact, and failure to make reasonable accommodations. *Adams*, 834 F. Supp. 2d at 392.

Floyd has not shown facts suggesting intentional discrimination, as discussed previously. Nor has he pled facts showing disparate impact upon disabled persons. The only allegation from which failure to make reasonable accommodation might be inferred is Dr. Smith's denial of a wheelchair. Doctor Smith's file note says, "a wheelchair is often not the right treatment for osteoarthritis, etc." Dkt. No. 23 at 9. Dr. Smith also observed Floyd's legs, finding no muscle mass loss, and he tested his reflexes. The decision not to order a wheelchair was made, not to deprive Floyd of access to services, programs, or activities, but based upon Dr. Smith's opinion that a wheelchair was not medically necessary and might be harmful to Floyd's condition in the long run. However inaccurate the medical decision might have been and however much it is another factor from which one could infer deliberate indifference to Floyd's increasing pain, it was not discriminatory.

More importantly, the regulations promulgated to enforce the ADA provide that "[t]his part does not require a public entity to provide to individuals with disabilities personal devices, such as wheelchairs . . ." 28 C.F.R. § 35.135. These regulations may require a public to make

reasonable modifications so that an individual using a wheelchair may access the premises safely. *Id.* at § 35.137. That is different from requiring the provision of a wheelchair itself.

Because the facts alleged in the Amended Complaint do not support findings of constitutional discrimination nor of discrimination under the ADA, I will dismiss this claim.

## III. Conclusion

For the reasons stated, I will grant the Motion to Dismiss Nurse Trent; I will deny the Motion to Dismiss the deliberate indifference claims against Dr. Smith and Nurse Practitioner Holbrook. I will grant the Motion to Dismiss all discrimination claims against the defendants. An appropriate order will be entered this day.

Enter: September 30, 2026

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge